12 F.3d 973
 Joseph Angelo DiCESARE, Plaintiff-Appellant,
v.
Larry D. STUART; Rene P. Henry, Jr.; The County of Osage
County, Oklahoma; Unknown County Commissioners, Three
Unknown County Commissioners; Unknown Osage County
Sheriffs, Unknown Sheriff & Deputies of the Osage County
Sheriff's Department, Defendants-Appellees.
 No. 93-5019.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 20, 1993.
 
 1
 Joseph Angelo DiCesare, pro se.
 
 
 2
 Susan B. Loving, Atty. Gen. of Oklahoma, and Linda K. Soper, Asst. Atty. Gen., Oklahoma City, OK, for defendants-appellees Larry D. Stuart and Rene P. Henry, Jr.
 
 
 3
 David W. Lee and Gayla I. Fields, of David W. Lee, P.C., Oklahoma City, OK, for defendants-appellees Sheriff, Deputies, and Com'rs of Osage County and Terry Hargis.
 
 
 4
 Before LOGAN and BRORBY, Circuit Judges, and KANE,* District Judge.
 
 
 5
 KANE, Senior District Judge.
 
 
 6
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 7
 Plaintiff-appellant Joseph Angelo DiCesare appeals the district court's entry of summary judgment in favor of defendants on his civil rights complaint, brought pursuant to 42 U.S.C. Sec. 1983. Because the district court erred in concluding that defendants complied with the law, and because several factual issues remain, we reverse and remand for further proceedings.
 
 
 8
 On November 5, 1990, the Osage County Sheriff's Department received a complaint about a stray horse. Upon investigation, Deputy Sheriff Ferguson and Undersheriff Williams were directed to the pasture from which the complainant believed the horse had strayed. The premises identified by the complainant belonged to plaintiff DiCesare. Trying to locate the horse's owner, Ferguson and Williams climbed over the gate and walked down a driveway to a house. There, they saw three horses in pens and approximately eight dogs running loose. When no one answered the door, Ferguson and Williams left a note for the occupant.
 
 
 9
 The following day, Ferguson returned to the property, climbed the gate, and approached the house. There, he discovered a dead horse being eaten by the dogs. When he checked the license plate numbers of several vehicles on the premises, he obtained plaintiff's name. Ferguson located plaintiff's parents but they accepted no responsibility for the animals. That afternoon, Ferguson and Williams returned to the property, where they discovered several more dead horses and a dead dog. Upon checking the horses in the pens, they noted that two of them were very thin. A number of emaciated horses then emerged from a wooded area near the residence. The animals were barely able to walk.
 
 
 10
 The next morning, Ferguson, Williams, Deputy Lansdown, and Deputy Metcalf arrived at the property and used a master key to open the padlock on the gate. They were met by Tulsa County Deputy O'Dell and veterinarian Terry Hargis. After Dr. Hargis determined that the horses were suffering from malnutrition, they were seized and taken to the Collinsville Sale Barn to be fed and treated. Twelve of the horses were in poor condition, but a thirteenth horse appeared healthy.
 
 
 11
 On November 9, 1990, Assistant District Attorney Rene P. Henry, Jr. applied to the court for an order directing the care and treatment of the horses. Thereafter, several of the horses were euthanized. On January 4, 1991, Henry issued a notice indicating that the horses would be sold on January 15, 1991, to satisfy a lien held by the Osage County Sheriff's Department for the care, feed, and services provided. The notice was sent to all persons believed to have an interest in the horses, including plaintiff DiCesare, who was incarcerated at the Oklahoma State Reformatory. Although the notice was received at the reformatory on January 10, 1991, plaintiff did not receive it until Friday, January 12, 1991.
 
 
 12
 The horses were sold for a total of $2,730. From this amount, the livestock commission, insurance, feed, yardage, and veterinary services were paid, resulting in a net loss to the sheriff's department of $390.40. No prosecution has been commenced against DiCesare.
 
 
 13
 On April 27, 1991, the Osage County District Attorney's office received a tort claim from DiCesare, which was stamped "received" by that office. On March 31, 1992, DiCesare filed a complaint against district attorneys Stuart and Henry, the sheriff and deputies of the Osage County Sheriff's Department, the County of Osage County, certain unknown county commissioners, the unknown owners of the Collinsville Sales Barn, and the unknown veterinarians involved in the case.
 
 
 14
 Defendants Stuart and Henry immediately moved for summary judgment on immunity grounds. Because their motion identified several of the previously unknown defendants, DiCesare moved for leave to amend his complaint to add the additional parties and to add at least one claim against Stuart and Henry. The motion was denied because it would cause undue prejudice to the district attorneys.
 
 
 15
 The district court granted Stuart and Henry summary judgment on DiCesare's damages claims, on prosecutorial immunity grounds. The court denied qualified immunity on the claims for equitable relief, however, finding that plaintiff's allegations, if true, sustained the conclusion that his constitutional rights had been violated by the seizure and sale of the horses. The court also ordered that an investigative report be prepared as to the events underlying DiCesare's claims.
 
 
 16
 After the report was completed, defendants Stuart, Henry, and the sheriff, deputies, and commissioners of Osage County filed motions for summary judgment. Finding that the facts in the special report were undisputed, the district court granted summary judgment. The court first held that, based on the undisputed facts, defendants had complied with the law. Concluding that plaintiff's allegations were without merit, the court entered judgment in favor of all defendants.[1]
 
 
 17
 DiCesare filed this appeal, raising sixteen issues. Because many of his issues overlap, we combine them as follows: (1) whether the district court erred in granting Stuart and Henry absolute immunity; (2) whether the court erred in granting summary judgment when DiCesare presented viable claims and several factual disputes remain; (3) whether the court abused its discretion in not appointing counsel for DiCesare and in not helping him pursue his claims; (4) whether the court erred in granting summary judgment before discovery was completed; (5) whether the court abused its discretion in denying leave to amend the complaint; (6) whether the court erred in granting judgment under 28 U.S.C. Sec. 1915(d) when DiCesare had paid the filing fees; (7) whether DiCesare's Seventh Amendment right to a jury trial was violated; (8) whether the court erred in granting summary judgment in favor of Terry Hargis without giving DiCesare ten days to respond; and (9) whether the court erred in denying DiCesare's motion to rescind the dismissal of several defendants.
 
 Prosecutorial Immunity
 
 18
 Assistant District Attorney Henry performed two functions in this case: he obtained a court order for the feeding and care of the horses and he issued a notice that the horses would be sold to satisfy the sheriff's department's lien on the animals. It is unclear whether District Attorney Stuart participated in these actions. The district court found that both these actions were taken in a prosecutorial capacity and were, therefore, insulated by prosecutorial immunity.
 
 
 19
 A prosecutor is entitled to absolute immunity when his activities are intimately associated with the judicial phase of a criminal process. Imbler v. Pachtman, 424 U.S. 409, 430, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). When a prosecutor is engaged in administrative duties, however, he is entitled only to qualified immunity. Buckley v. Fitzsimmons, --- U.S. ----, ----, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). The "actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor. Qualified immunity ' "represents the norm" ' for executive officers, so when a prosecutor 'functions as an administrator rather than as an officer of the court' he is entitled only to qualified immunity." Id. (quoting Imbler, 424 U.S. at 431 n. 33, 96 S.Ct. at 995 n. 33) (citations omitted).
 
 
 20
 Here, while we agree that obtaining care for the horses could be construed as preserving evidence in preparation for criminal proceedings, we do not agree that issuing the notice of sale related to the district attorneys' judicial functions. Instead, this case is controlled by our decision in Coleman v. Turpen, 697 F.2d 1341 (10th Cir.1982), in which we held that a prosecutor who assisted in the sale of "seized property not used as evidence that the State did not intend to keep," was acting as an administrator, not an advocate, and was entitled only to qualified immunity. Id. at 1346. The district attorneys, therefore, are entitled only to qualified immunity for the act of issuing the notice of sale.
 
 Propriety of Summary Judgment
 
 21
 DiCesare next argues that the district court erred in granting summary judgment on his substantive claims. Based on the undisputed facts, the court concluded that defendants had complied with the law, citing a number of Oklahoma statutes. Because the case was terminated at this step, the district court never considered whether any or all of defendants were entitled to qualified or state tort immunity. We conclude that the district court erred in finding no violations of law. However, based on this record, the case must be remanded for a further determination whether defendants are entitled to immunity based on the apparent legitimacy of the statutes.
 
 
 22
 DiCesare contends that his Fourth Amendment rights were violated when his horses were seized without a warrant. It is beyond argument that the officers had probable cause to seize the horses. Their poor condition was obvious, and Oklahoma law gave the officers the right to take them into custody immediately. See Okla.Stat.Ann. tit. 21, Sec. 1685. The question is whether they were required to obtain a warrant before doing so.
 
 
 23
 A warrantless seizure is per se unreasonable unless justified by a few carefully delineated exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2031-32, 29 L.Ed.2d 564 (1971). Defendants argue that the seizure in this case was justified by the "plain view" doctrine which allows an immediate warrantless seizure if (1) the item is in plain view; (2) the police officer is lawfully located in a place from which the item can plainly be seen; (3) the officer has a lawful right of access to the item itself; and (4) it is immediately apparent that the seized item is incriminating on its face. Winters v. Board of County Comm'rs, 4 F.3d 848, 854 (10th Cir.1993); see also Horton v. California, 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2307-08, 110 L.Ed.2d 112 (1990). Here, the officers were neither in a place lawfully from where they could see the horses nor did they have a lawful right of access to them.
 
 
 24
 "It is ... an essential predicate to any valid warrantless seizure that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." Horton, 496 U.S. at 136, 110 S.Ct. at 2308. In this case, the officers made a warrantless entry onto DiCesare's property in order to "view" the horses on the morning of November 7, 1990. No exigent circumstances supported this entry. Although the horses were clearly in poor health, this did not excuse the officers from obtaining a warrant when they waited approximately sixteen hours after discovering the animals before seizing them. See, e.g., G.M. Leasing Corp. v. United States, 429 U.S. 338, 358-59, 97 S.Ct. 619, 631-32, 50 L.Ed.2d 530 (1977) (no exigent circumstances when agents delayed for two days following observation of seizable property and more than one day after observing material being removed from the office).
 
 
 25
 The fact that the horses had been seen in plain view on the previous day did not insulate this second separate warrantless entry and seizure. Although the initial entry may have been supported by the exigency of locating the stray horse's owner, this exigency dissipated when the officers decided to return to the premises for the purpose of seizing the horses. See Michigan v. Tyler, 436 U.S. 499, 511, 98 S.Ct. 1942, 1950-51, 56 L.Ed.2d 486 (1978) (when subsequent entry is detached from the initial exigency, warrant required); Winters, 4 F.3d at 854 ("[T]he exigent circumstances allowing a warrantless ... search evaporate when the police intend to seize particular ... evidence.").
 
 
 26
 Even assuming that the horses could somehow be seen from a public place, the officers did not have a "lawful right of access" to them. Instead, the officers had to make an unlawful entry onto DiCesare's property to reach them. Even when a seizable item can plainly be seen on premises belonging to a criminal suspect, the authorities may not make a warrantless trespass and seizure absent exigent circumstances. See Horton, 496 U.S. at 137 n. 7, 110 S.Ct. at 2308 n. 7; Coolidge, 403 U.S. at 468, 91 S.Ct. at 2039.
 
 
 27
 Based on the record, it also appears that DiCesare presents a legitimate claim that his due process rights were violated. It is fundamental that "the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement." Logan v. Zimmerman Brush Co., 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1982). Further, due process requires that a notice advising an individual that his property right will be terminated must also advise him of the availability of a procedure for protesting the proposed action. See, e.g., Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 14-15, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978); Aacen v. San Juan County Sheriff's Dep't, 944 F.2d 691, 696-97 (10th Cir.1991).
 
 
 28
 Here, the statutory scheme under which DiCesare's horses were sold makes no provision for a hearing at any time. Compliance with the statute, therefore, did not provide DiCesare with due process. See, e.g., Summers v. Utah, 927 F.2d 1165, 1169 (10th Cir.1991). Further, the notice sent to him merely informed him of the impending sale, without informing him of the availability of an opportunity to present his objections. From the moment these horses were seized, therefore, he has never been given an opportunity to challenge the seizure, the creation of the lien, or the forfeiture of the horses to satisfy the lien.
 
 
 29
 Although the availability of qualified immunity is a question of law, we will not address the question for the first time on appeal. See Workman v. Jordan, 958 F.2d 332, 336-37 (10th Cir.1992) (declining to rule on immunity defense that had not been considered by the district court). On remand, the district court should determine which, if any, of defendants are entitled to qualified immunity, see, e.g., Aacen, 944 F.2d at 701-02 (compliance with state law procedure was objectively reasonable), and whether all defendants are sufficiently connected to the constitutional violations to hold them liable. See, e.g., Winters, 4 F.3d at 855, 857 (county and sheriff's department could not be held liable in absence of evidence that unconstitutional acts reflected their official policies and individual actors were not liable unless affirmatively linked to the unconstitutional conduct). Finally, we cannot, as requested by defendants, conclude that they are entitled to immunity under the Oklahoma Governmental Tort Claims Act, Okla.Stat.Ann. tit. 51, Secs. 152-53. The district court did not address this state immunity, and we will not make the determination for the first time on appeal.
 
 
 30
 Appointment of Counsel and Assistance to a Pro Se Litigant
 
 
 31
 We turn to DiCesare's remaining allegations of error. He first argues that the district court erred in not appointing counsel to represent him. The district court is vested with broad discretion in determining whether to appoint counsel and "[o]nly in those extreme cases where the lack of counsel results in fundamental unfairness will the district court's decision be overturned." McCarthy v. Weinberg, 753 F.2d 836, 839 (10th Cir.1985). Here, the record amply demonstrates plaintiff's grasp of the issues and his ability to present his case. The district court, therefore, did not abuse its discretion in declining to appoint counsel.
 
 
 32
 DiCesare also argues that the district court erred in not ordering an outside agency to conduct an investigation and in failing to explain to him what he needed to do. DiCesare cites no authority for his claim that an independent investigator should have been employed, for the simple reason that there is no requirement to do so. Further, while we hold pro se litigants to a less stringent standard, it is not the proper function of the district court to assume the role of advocate for the pro se litigant. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir.1991).
 
 Discovery
 
 33
 Next, DiCesare argues that the district court erred in granting summary judgment before discovery was completed. It is important to note that defendants' motions for summary judgment were based on the defense of qualified immunity. This defense, if successful, protects public officials not only from liability, but from the burdens of discovery and litigation as well. Harlow v. Fitzgerald, 457 U.S. 800, 817-18, 102 S.Ct. 2727, 2737-38, 73 L.Ed.2d 396 (1982). "Until this threshold immunity question is resolved, discovery should not be allowed." Id. at 818, 102 S.Ct. at 2738; see also Workman, 958 F.2d at 336.
 
 
 34
 Moreover, if DiCesare felt he could not oppose defendants' motions for summary judgment without more information, he should have submitted an affidavit pursuant to Fed.R.Civ.P. 56(f) requesting a continuance until further discovery was had. See Committee for First Amendment v. Campbell, 962 F.2d 1517, 1522-23 (10th Cir.1992) (setting forth information which should be included in such an affidavit). Pro se litigants are subject to the same rules of procedure that govern other litigants. Green v. Dorrell, 969 F.2d 915, 917 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1336, 122 L.Ed.2d 720 (1993). For these reasons, we find no abuse of discretion in deciding the summary judgment motion before discovery was completed.
 
 
 35
 28 U.S.C. Sec. 1915(d) and Amendment of the Complaint
 
 
 36
 DiCesare also complains that the district court should not have based its decision on 28 U.S.C. Sec. 1915(d) because he paid the filing fees. It appears, however, that the district court granted summary judgment in favor of defendants pursuant to Fed.R.Civ.P. 56, rather than dismissing DiCesare's claims as "frivolous" pursuant to the in forma pauperis statute. Therefore, his argument is without merit.
 
 
 37
 He argues next that the district court abused its discretion in denying his motion to amend his complaint. We review a court's denial of a motion to amend for abuse of discretion. Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir.1992). Because DiCesare could have included the additional claims against defendants Henry and Stuart in his original complaint, the court was justified in concluding that amendment would unduly prejudice these defendants.Claims against Terry Hargis and the Collinsville Sale Barn
 
 
 38
 Finally, DiCesare argues that the district court erred in granting summary judgment in favor of veterinarian Terry Hargis before DiCesare's ten days to respond had passed. In a related issue, he argues that the district court erred in not allowing him to undo the dismissal of several defendants who had not been served within 120 days after the complaint was filed.
 
 
 39
 During a telephone status conference, plaintiff consented to the dismissal of his claims against veterinarian Terry Hargis and the owners of the Collinsville Sale Barn because they had not been served in a timely manner. He now argues that the claims should not have been dismissed because he had "good cause" for not serving these defendants. Contrary to DiCesare's assertion, he either knew or could have discovered easily the names of such defendants well before the 120-day period expired. DiCesare, therefore, has not shown good cause for his failure to serve the remaining defendants in a timely manner. A pro se litigant is still obligated to follow the requirements of Fed.R.Civ.P. 4. Cf. Jones v. Frank, 973 F.2d 872 (10th Cir.1992) (affirming district court's dismissal of pro se litigant's action under Rule 4(j) due to lack of proper service). Because the claim against Dr. Hargis had already been dismissed, the district court's order did not include a summary judgment in favor of the veterinarian, and DiCesare was not deprived of his right to respond.
 
 
 40
 The remainder of DiCesare's claims are without merit. We hereby GRANT plaintiff's motion for a certificate of probable cause. The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED and REMANDED for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 It is not clear from the record whether the County of Osage County was ever served as a defendant in this case, and if so, whether the county actually submitted a motion for summary judgment. The court's order purported to grant judgment in favor of "all" defendants. Because a district court can enter summary judgment sua sponte where, as here, the losing party is on notice to come forward with all his evidence, Celotex Corp. v. Catrett, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), we conclude that the court's judgment resolved the claims against the county as well, and that, therefore, we have jurisdiction over this appeal. See 28 U.S.C. Sec. 1291; Fed.R.Civ.P. 54(b)