John SANDERS, dba Golden Rule Pawn Brokerage, Plaintiff–Appellant,

v.

CITY OF SAN DIEGO, a Municipal Corporation; Jerry Sanders, Chief of Police, individually and in his capacity as Chief of Police of the City of San Diego; Dan Berglund, Captain, individually and in his capacity as Captain of the Eastern Division of the City of San Diego; Ed Paradise, individually and in his capacity as Detective of the City of San Diego; Mark Michel, individually and in his capacity as Detective of the City of San Diego; et al., Defendants–Appellees.

No. 95–55122.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1996.

Decided Aug. 6, 1996.

1. The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

Henry O. Noffsinger, Pleasant Hill, California, for plaintiff-appellant.

Grant Richard Telfer, Deputy City Attorney, San Diego, California, for defendant-appellee.

Before WIGGINS, THOMPSON and TROTT, Circuit Judges.

WIGGINS, Circuit Judge:

John Sanders (dba Golden Rule Pawn Brokerage) appeals the district court's grant of summary judgment in favor of the City of San Diego and Detective Mark Michel in this action brought under 42 U.S.C. §§ 1983, 1985, and 1988. Sanders contends that the warrantless seizure of allegedly stolen property from his pawn shop and the police de-

partment's return of stolen property to its owner violated Sanders' right to procedural due process. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM in part and REVERSE and REMAND in part.

## I.

Linda Hardeman, a nurse's aide employed to provide in-home care to Audrey Moore, stole numerous items of jewelry from Moore. On October 26, 1993, Hardeman pawned two of these items, a necklace and ring, at Sanders' pawn shop. As required by law, Sanders reported both loan transactions to the San Diego Police Department.

In November 1993, Detective Mark Michel was assigned to investigate Moore's complaint concerning several missing pieces of jewelry. Michel obtained a detailed description of the missing items from Moore's daughter, Pamela Kish; he then began to investigate the possibility that one of Moore's health care givers had stolen the jewelry. Through use of the department's computer system, Michel discovered that Hardeman, who was on probation for previously committed crimes, had pawned several items very similar to those described by Kish.

Michel provided Kish with the locations of the four pawn shops where Hardeman had pawned jewelry and with the pawn ticket numbers. On December 9, 1993, Kish phoned Michel and told him that she had recognized her mother's jewelry at two of the four pawn shops; however, she told Michel that, at Golden Rule, the owner had refused to display the items to her. Michel arrived at Golden Rule twenty minutes after Kish's telephone call. He identified himself and demanded that Sanders produce the two items for inspection pursuant to San Diego Municipal Code § 33.1101. Sanders refused to produce the items in the absence of a warrant.

The following day, Michel returned to Golden Rule without a warrant. He again identified himself and again requested that Sanders produce the items pawned by

Hardeman for inspection pursuant to Municipal Code § 33.1101. Sanders initially refused to produce the items; after a telephone discussion with his attorney (that involved Michel as well), Sanders produced the ring and necklace. Believing the jewelry to be very similar to Kish's description of the stolen jewelry, Michel seized the jewelry and gave a receipt to Sanders.[1]

After Moore identified the ring and necklace as belonging to her, Michel impounded the property and requested a search warrant for Hardeman's house. During the warrant's execution, Hardeman was arrested. On December 28, 1993, she pled guilty to felony theft charges.

On January 12, 1994, Michel sent Sanders a certified letter, informing Sanders that Moore had requested the release of the seized property and had signed a declaration of ownership, a copy of which was enclosed with the letter. The letter also states:

California law provides that you be given an opportunity to be heard as to why such property should not be delivered to the person claiming ownership. You have fifteen (15) days from receipt of this letter to contact Detective M. Michel of the San Diego Police Department, telephone number 495–7963, if you desire to be heard as to why the property should not be delivered to the person claiming ownership.

In the event you do not contact the San Diego Police Department within this period, the property will be released to the person claiming ownership.

Sanders signed for the letter on January 19, 1994.

On February 3, 1994 (within fifteen days of receipt of Michel's letter), Sanders sent Michel two documents by certified mail. The first was a "Notice to Seizing Officer" identical to the notice Sanders gave Michel when the jewelry was seized. The second was entitled "Release to Police Officer of Property Placed on Hold," stating in part:

Dear Det. Michel

---

1. At that time, Sanders gave Michel a document entitled "Notice To Seizing Officer," which describes California Business and Professions Code § 21647's 90–day hold provision, warns the offi-

cer that he might be violating the pawnbroker's constitutional rights, and states that the officer may not return the seized property to a third party.

I am requesting that the above described property seized on Dec. 10, 1993 at 12:45 p.m. Ticket # s 134 & 135 ... being no longer needed for evidentiary use at this time, be returned to Golden Rule Pawn Brokerage forthwith.[2]

Michel apparently never responded to Sanders' letter. Instead, on March 15, 1994, Michel sent a certified letter to Renate Sanders (Sanders' wife) at Golden Rule. The letter was identical to the January 12, 1994 letter: it notified Renate Sanders that Moore had claimed the seized property, signed a declaration of ownership, and that she should contact Michel within fifteen days of receipt of the letter if she wanted an opportunity to be heard regarding why the property should not be delivered to Moore. The letter again enclosed a copy of Moore's Declaration of Ownership, which reflected an added notation that criminal proceedings against Hardeman were concluded. Although Sanders signed for the letter on March 16, 1994, Michel received no response from Sanders or his wife. On April 1, 1994, fifteen days later, Michel directed the custodian of the police department property room to release the seized jewelry to Moore.

Sanders filed this action against, *inter alia,* the City of San Diego and Michel, alleging that the warrantless seizure of the stolen jewelry and the subsequent return of the jewelry to Moore violated Sanders' Fourth, Fifth, and Fourteenth Amendment rights. On cross-motions for summary judgment, the district court ruled in favor of the City and Michel, holding that (1) the warrantless seizure was permissible under the plain view doctrine, (2) the warrantless seizure did not violate due process because of the lack of pre-deprivation notice and a hearing, and (3) the disposition of the property pursuant to California Penal Code § 1413 satisfied Sanders' procedural due process rights.

Sanders timely appeals.

## II.

We review the grant of summary judgment *de novo. Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relative substantive law. *Id.* We review the district court's interpretation of state law under the same independent *de novo* standard that we review questions of federal law. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

## III.

### A.

Appellees contend as a threshold matter that Sanders lacks standing to challenge the seizure or disposition of the property. Appellees argue that the loan contract between Hardeman and Golden Rule was procured by Hardeman's fraud and is therefore voidable; therefore, they claim that Sanders has no property interest in the pawned property.

This argument is without merit. We have previously held that a pawnbroker may challenge the seizure of property in his possession under the Fourteenth Amendment, stating:

[T]he pawnbroker, as pledgee, has a legitimate possessory interest in the property as against the rest of the world except the person having title to the property. *See Wolfenbarger v. Williams* 826 F.2d 930, 933 (10th Cir.1987), *abrogated in part on other grounds,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). The Supreme Court held in *Fuentes v. Shevin,* 407 U.S. 67, 87, 92 S.Ct. 1983, 1997–98, 32 L.Ed.2d 556 (1972), that the procedural protections of the Fourteenth Amendment

---

**2.** The release first quotes Business & Professions Code § 21647(b), which requires pawnbrokers to release property placed on hold to a police officer. The release further states that Sanders releases the property to Michel and the San Diego police department "in consideration of their assurance that the property will be promptly returned directly to Golden Rule Pawn Brokerage when it is no longer required for use in the criminal case." The form is signed by Sanders but not by Michel.

apply to protect a significant property interest, regardless of the ultimate outcome of a hearing on the final entitlement to the possession and ownership of the property. *G & G Jewelry, Inc. v. City of Oakland*, 989 F.2d 1093, 1098 (9th Cir.1993).[3]

Appellees' claim that the loan contract was procured by fraud and therefore voidable is directed at "the ultimate outcome" of the dispute over the right to possess or own the seized property, not at whether Sanders has a possessory interest sufficient to invoke the procedural protections of the Fourteenth Amendment. We thus conclude that Sanders has standing to assert his due process challenge to the seizure and disposition of the pawned property.

### B.

■ Sanders devotes much of his briefs to arguing that Michel's warrantless seizure of the pawned items violated the Fourth Amendment. Sanders conceded, however, at oral argument that we have previously held that such a seizure complies with the Fourth Amendment. *See G & G Jewelry*, 989 F.2d 1093. In *G & G Jewelry*, we held that despite the provisions of Business & Professions Code § 21647,[4] the Fourth Amendment permits the warrantless seizure of merchandise from a pawnbroker for investigatory purposes where (1) the police officer is lawfully on the premises, (2) the pawnbroker is required by statute to produce the pawned property for inspection, and (3) the examination of the property reveals that there was probable cause to believe it was stolen. *Id.* at 1101.[5]

Here, it is undisputed that Michel was authorized to be on the premises, to inspect the property, and had probable cause to believe the property was stolen. It is also undisputed that Michel seized the property for investigatory purposes. *Cf. id.* at 1098 (reversing summary judgment because a genuine issue of material fact existed as to whether the police officers took the pawned property for a lawful purpose). Thus, we need not further address Sanders' Fourth Amendment challenge to Michel's warrantless seizure of the pawned property.

### C.

■ Sanders also contends that the initial warrantless seizure of property for investigatory purposes constituted a violation of Sanders' pre-deprivation due process rights because the state failed to provide Sanders with pre-deprivation notice and a hearing. Because it is unclear whether Sanders abandoned this argument, we address the merits of his due process challenge to the initial seizure and hold that Officer Michel's compliance with the Fourth Amendment when seizing the property for investigatory purposes satisfied pre-deprivation procedural due process as well.

Sanders asserts that he was entitled to pre-deprivation notice and a hearing *in addition to* compliance with the Fourth Amendment when Michel seized the allegedly stolen property. He relies on several Supreme Court cases that, after rejecting the exclusive reliance on Fourth Amendment standards for determining whether a *civil* seizure violates procedural due process, hold that due process requires pre-deprivation notice and a hearing. *See, e.g., United States v. James Daniel Good Real Property*, 510 U.S. 43, 45–47, 114 S.Ct. 492, 497, 126 L.Ed.2d 490 (1993) (absent extraordinary circumstances, the Due Process Clause of the Fifth Amendment prohibits the government in a civil forfeiture case from seizing real property without first affording the owner notice and an opportuni-

---

**3.** Sanders' possessory interest in the pawned property also provides him with standing to claim that the initial seizure violated the Fourth Amendment. *See Soldal v. Cook County, Ill.*, 506 U.S. 56, 60, 113 S.Ct. 538, 543, 121 L.Ed.2d 450 (1992) ("A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'") (citation omitted).

**4.** Business & Professions Code § 21647 authorizes a peace officer to place allegedly stolen property in possession of a pawnbroker on a 90-day hold, so that the property will remain available for investigatory purposes. Cal. Bus. & Prof.Code § 21647.

**5.** We justified the warrantless seizure under the plain view exception to the general rule that warrantless seizures are unreasonable. *Id.* at 1099.

ty to be heard); *Fuentes v. Shevin,* 407 U.S. 67, 96, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972) (civil statutes authorizing the summary seizure of goods or chattels by a writ of replevin upon the *ex parte* application and posting of a bond violated the possessors' right to procedural due process because the statutes failed to provide for an opportunity to be heard *prior to* the chattels being seized from their possessors).[6]

We find no reason to apply the procedural due process standards articulated in the civil seizure context to the seizure at issue here. To begin, we agree that the seizure of property believed to be stolen must comply with both the Fourth Amendment and procedural due process. *See Good,* 510 U.S. at 49, 114 S.Ct. at 499 ("We have rejected the view that the applicability of one constitutional amendment pre-empts the guarantees of another."); *Soldal,* 506 U.S. at 70, 113 S.Ct. at 548 ("Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands.").[7]

In the criminal context, however, the two standards are often identical, such that compliance with the Fourth Amendment also serves to comply with procedural due process. For example, in holding that the Fourth Amendment provides the appropriate standard for determining the constitutionality of detaining arrested persons prior to trial, the Supreme Court stated:

Here we deal with the complex procedures of a criminal case and a threshold right guaranteed by the Fourth Amendment. The historical basis of the Fourth Amendment is quite different from the relatively recent application of variable procedural due process in debtor-creditor disputes and termination of government-created

benefits. The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of persons or property in criminal cases, including the detention of suspects pending trial.

*Gerstein v. Pugh,* 420 U.S. 103, 125 n. 27, 95 S.Ct. 854, 869 n. 27, 43 L.Ed.2d 54 (1975); *see also Good,* 510 U.S. at 49–51, 114 S.Ct. at 499 (although exclusive reliance on the Fourth Amendment is appropriate in the arrest context because the amendment was tailored explicitly for the criminal justice system, the Fourth Amendment is not the end of the constitutional inquiry when an *ex parte* civil seizure occurs); *Fuentes,* 407 U.S. at 93 n. 30, 92 S.Ct. at 2001 n. 30 ("The seizure of possessions under a writ of replevin is entirely different from the seizure of possessions under a search warrant.... Thus, our decision today in no way implies that there must be opportunity for an adversary hearing before a search warrant is issued."). Moreover, the Supreme Court has noted that even in the civil context, the Fourth Amendment can serve to resolve the legality of searches and seizures without reference to other constitutional provisions, where the effect of the government's actions do not go beyond the traditional meaning of search or seizure. *Good,* 510 U.S. at 51–52, 114 S.Ct. at 500 ("[T]he Fourth Amendment applies to searches and seizures in the civil context and may serve to resolve the legality of these governmental actions without reference to other constitutional provisions.... But the purpose and effect of the Government's action in the present case go beyond the traditional meaning of search or seizure.").

---

**6.** Sanders also relies upon *Armendariz v. Penman,* 31 F.3d 860 (9th Cir.1994), *aff'd in relevant part,* 75 F.3d 1311 (9th Cir.1996) (en banc), which held that owners of buildings closed by a city-wide housing code inspection sweep had stated a claim for a violation of procedural due process because they alleged that their property was closed without pre-deprivation notice or hearing when no exigent circumstances were present. *Id.* at 865–66.

**7.** In *Soldal,* the Court held that the forced removal of a trailer home from a trailer park under the

ostensible authority of a civil eviction statute constituted a seizure of property for the purposes of the Fourth Amendment as well as a deprivation of property under the Fifth and Fourteenth Amendments. *Soldal,* 506 U.S. at 69–71, 113 S.Ct. at 548–49. Thus, the Court held that the seizure of the Soldals' trailer home implicated more than one constitutional right: the Soldals' right to be free from unreasonable searches and seizures and the Soldals' right to due process. *Id.*

Here, Michel's seizure of the allegedly stolen jewelry did not go beyond the traditional purpose of a seizure-to gather evidence in a criminal investigation. We have found no case in which compliance with the Fourth Amendment in the context of a criminal investigation or proceeding has been held not to satisfy due process as well.[8] Nor have we found any case that addresses whether a seizure of property as evidence in a criminal investigation must comply with any other constitutional standard than that of the Fourth Amendment in order to satisfy due process.[9]

For these reasons, we conclude that here, as in *Gerstein,* the Fourth Amendment supplies the "process that is due." We hold that, when seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well.

### D.

Thus, we reach the crux of Sanders' dispute with Officer Michel and the City of San Diego. Sanders claims that Michel's return of the property to Moore, rather than to himself, at the conclusion of the criminal proceedings deprived him of his interest in the property without post-deprivation due process in violation of the Fourteenth Amendment. Sanders' argument is twofold: first, he claims that Business & Professions Code §§ 21645–47, which regulate second-hand dealers and pawnbrokers, require that a peace officer return seized property to a pawnbroker once its use in criminal proceedings is no longer necessary; second, he contends that the City failed to follow the procedures it now purports to rely upon as satisfying procedural due process.

The City, on the other hand, argues that it properly disposed of the jewelry pursuant to Penal Code § 1413(b) after providing Sanders with notice and an opportunity for a hearing. It claims that Sanders failed to respond to the notice sent to him by Michel as required by Financial Code § 21206.8, and therefore it was entitled to return the property to the person claiming ownership pursuant to Penal Code § 1413(b).

For the following reasons, we hold that the disposal of property seized from pawnbrokers—rather than placed on hold—is governed by Financial Code § 21206.8. We also

**8.** *See Albright v. Oliver,* 510 U.S. 266, 273–74, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994) (noting the Fourth Amendment was drafted to address the matter of pretrial deprivations of liberty and holding that claim arising out of arrest and prosecution lacking in probable cause must be brought under Fourth Amendment and not as substantive due process claim); *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that claim of excessive force during arrest must be analyzed under the Fourth Amendment reasonableness standard rather than under a substantive due process standard because Fourth Amendment provided an explicit textual source of constitutional protection); *Baker v. McCollan,* 443 U.S. 137, 144–45, 99 S.Ct. 2689, 2694–95, 61 L.Ed.2d 433 (1979) (pretrial detention of arrestee that complied with Fourth Amendment warrant requirement did not deprive arrestee of liberty without due process of law); *Taylor v. Waters,* 81 F.3d 429, 435–36 (4th Cir.1996) (arrestee's assertion that investigator failed to disclose exculpatory evidence to prosecutor did not allege deprivation of any right guaranteed under the Fourteenth Amendment Due Process Clause, since Fourth Amendment defined process that was due for seizures of person or property in criminal cases, including detention of suspects pending trial); *Gehl Group v. Koby,* 63 F.3d 1528, 1539 (10th Cir.1995)

(criminal summons and complaint brought against the Fraternal Order of Police ["FOP"] based upon alleged misrepresentations did not violate FOP members' right to conduct a lawful occupation without due process; because probable cause under Fourth Amendment existed to bring the charges, procedural due process required nothing more).

**9.** *See, e.g., Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990) (where search lawfully performed under a warrant, Fourth Amendment permitted seizure of item in plain view that was clearly contraband); *Zurcher v. Stanford Daily,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) (Fourth Amendment requires probable cause to believe that fruits, instrumentalities, or evidence of crime are located in place to be searched; it does not require issuance of subpoena duces tecum to obtain evidence where possessor of premises to be searched is not a suspect); *Bonds v. Cox,* 20 F.3d 697, 701–02 (6th Cir.1994) (damage to house during execution of search warrant gave rise to Fourth Amendment claim under 42 U.S.C. § 1983); *DiCesare v. Stuart,* 12 F.3d 973, 978 (10th Cir.1993) (warrantless seizure of horses violated Fourth Amendment rights; procedural due process rights were violated when horses were disposed of without a hearing).

conclude that the statutory procedures satisfy procedural due process. However, we find that the district court erred in granting summary judgment on the issue of whether the City in fact complied with these procedures.

1.

First, we hold that Financial Code § 21206.8 governs the disposal of stolen property seized from pawnbrokers, rather than placed on hold under Business & Professions Code § 21647. Financial Code § 21206.8 provides in part:

**Disposal of property stolen or embezzled; notice; time; liability of pawnbroker**

(a) Notwithstanding the provisions of Chapter 12 (commencing with Section 1407) of Title 10 of Part 2 of the Penal Code, whenever property alleged to have been stolen or embezzled is taken from a pawnbroker, the peace officer, magistrate, court, clerk, or other person having custody of the property shall not deliver the property to any person claiming ownership unless the provisions of this section are complied with.

(b)(1) If any person makes a claim of ownership, the person having custody of the property shall notify the pawnbroker.

(2) If the pawnbroker makes no claim with respect to the property within 10 days of such notification, the property may be disposed of as otherwise provided by law.

Cal. Fin.Code § 21206.8.[10]

Accordingly, under Financial Code § 21206.8, where an owner makes a claim regarding property seized from a pawnbroker, the property cannot be disposed of (as provided for in Penal Code §§ 1407 *et seq.*) until notice is sent to the pawnbroker that a claim has been made. Cal. Fin.Code § 21206.8(b)(1). If the pawnbroker makes no claim with respect to the property within 10 days, the property can be disposed of as otherwise provided by law. *Id.* § 21206.8(b)(2).

Penal Code §§ 1407 *et seq.* provide various methods for disposing of stolen or embezzled property. *See* Cal. Pen.Code §§ 1407–13. According to § 1407, when a peace officer obtains custody of allegedly stolen property, he or she must hold the property subject to the provisions of Chapter 12, which govern the disposal of the property. Cal. Pen.Code § 1407. Penal Code § 1413(b) provides for one such method of disposal of the stolen property.[11] It requires that, in order to ob-

---

**10.** Section 21206.8 further provides:

(c) If property alleged to have been stolen or embezzled is taken from a pawnbroker, prior to any disposal of the property pursuant to Section 1411 of the Penal Code, the notice to be given to the owner and owner of a security interest pursuant to Section 1411 shall be given to the pawnbroker. Such property shall not be disposed of pursuant to Section 1411 until three months after such notice has been given.

(d) A pawnbroker shall not be liable to any person for any property seized from the pawnbroker on account of the pawnbroker's inability to return the property to that person because of the seizure.

*Id.*

**11.** Penal Code § 1413(b) states in part:

(b) The clerk or person in charge of the property section may, upon satisfactory proof of the ownership of property held pursuant to Section 1407, and upon presentation of proper personal identification, deliver it to the owner. Such delivery shall be without prejudice to the state or to the person from whom custody of the property was taken.... The person to whom property is delivered shall sign, under penalty of perjury, a declaration of ownership, which shall be retained by the clerk or person

in charge of the property section.... This subdivision shall not apply unless the clerk or person in charge of the property section has served upon the person from whom custody of the property was taken a notice of a claim of ownership and a copy of the satisfactory proof of ownership tendered and has allowed such person reasonable opportunity to be heard as to why the property should not be delivered to the person claiming ownership.

If the person upon whom a notice of claim and proof of ownership has been served does not respond asserting a claim to the property within 15 days from the date of receipt of the service, the property may be disposed of in a manner not inconsistent with the provisions of this section.

(c) The magistrate before whom the complaint is laid, or who examines the charge against the person accused of stealing or embezzling the property, or the court before which a trial is had for stealing or embezzling it, shall upon application by the person from whom custody of the property was taken, review the determination of the clerk or person in charge of the property section, and may order the property taken into the custody of the court upon a finding that the person to

tain property from the clerk of the property section, an owner must sign a declaration of ownership under penalty of perjury and must present satisfactory proof of ownership. Cal. Pen.Code § 1413(b). The person from whom the property was seized (i.e., the pawnbroker) must be served with a copy of a Notice of Claim of Ownership and a copy of the satisfactory proof of ownership. *Id.* The person also must be given a reasonable opportunity to be heard regarding why the property should not be delivered to the claimed owner. *Id.* If the person does not respond in 15 days, the clerk in charge of the property section may deliver the property to the claimed owner. *Id.* If the person does respond, he or she is entitled to review of the decision of the clerk by the magistrate or judge who presided over the criminal case against the person accused of stealing the property. *Id.* § 1413(c).[12]

Despite the explicit language of Financial Code § 21206.8 and Penal Code §§ 1407–13, Sanders argues that Business & Professions Code § 21647(c) requires that any property obtained from a pawnbroker for evidentiary purposes, regardless of whether the property is placed on hold under Business & Professions Code § 21647(b) or seized under the plain view exception, be returned to the pawnbroker after it is no longer needed for the criminal proceedings. Sanders acknowledges that there are several constitutional methods for *obtaining* allegedly stolen property for evidentiary purposes and that Officer Michel used one such method.[13] Nevertheless, he argues that *G & G Jewelry* held that § 21647 provides for the exclusive method for *disposal* of the property after it is no longer needed in criminal proceedings.

We disagree. Under Business & Professions Code § 21647, whenever a peace officer has probable cause to believe that property in the possession of a pawnbroker is stolen, the peace officer may place a 90–day hold on the property. Cal. Bus. & Prof.Code § 21647(a). If the property subject to hold is required in a criminal investigation, the pawnbroker, upon reasonable notice, must produce the property at reasonable times and places. *Id.* § 21647(b). If the property in possession of the pawnbroker is no longer required for the purpose of a criminal investigation, the peace officer must (1) release the hold if the property has not been reported stolen, or (2) if the property has been reported stolen, notify the alleged owner of the property of the name and address of the

whom the property was delivered is not entitled thereto. Such court shall make its determination in the same manner as a determination is made when the matter is before the court pursuant to Sections 1408 to 1410, inclusive.
Cal. Pen.Code § 1413.

12. Other methods for the disposal of stolen or embezzled property include: (1) application by the owner to the magistrate considering the charges against the person who allegedly stole or embezzled the property for an order requiring return of the property, Cal. Pen.Code § 1408; (2) application by the owner to the magistrate for return of the property, where the property is in the custody of the magistrate, *id.* § 1409; (3) application by the owner to the court before which the trial for stealing or embezzling has taken place for an order requiring delivery of the property, *id.* § 1410; (4) delivery to the county treasurer for sale where the owner and holder of a security interest have been notified, and where the stolen or embezzled property has not been claimed within three months of the notice; *id.* § 1411; and (5) return of the property to the secondhand dealer or pawnbroker, where the person from whom custody has been taken is a

secondhand dealer or licensed pawnbroker, reasonable but unsuccessful efforts have been made to notify the owner of the property, and the property is no longer needed for the criminal proceeding. *Id.*

In all of the above provisions, for an owner to *obtain* the *stolen* or *embezzled property*, he or she must provide satisfactory proof of title to the property and the person from whom custody of the property was taken must be given reasonable notice and opportunity to be heard.

13. As discussed above, in *G & G Jewelry* we held that the provisions of § 21647 are not the exclusive means by which a police officer can obtain the use of allegedly stolen property in possession of a pawnbroker for investigatory purposes. *G & G Jewelry*, 989 F.2d at 1101; *accord Christians v. Chester*, 218 Cal.App.3d 273, 267 Cal.Rptr. 124, *review denied*, (1990). Relying upon Financial Code § 21206.7, which requires a police officer to provide a receipt to a pawnbroker when seizing allegedly stolen property, we held that "[t]he police can either place a hold on the property, take possession of the property upon voluntary delivery by the pawnbroker, or seize the property and provide the receipt required by section 21206.7." *G & G Jewelry*, 989 F.2d at 1102.

pawnbroker and then release the hold after 30 days. *Id.* § 21647(c)(1),(2).[14]

In *G & G Jewelry,* we stated that Business & Professions Code § 21647 implicitly requires that property taken from a pawnbroker, however it is taken, must be returned to the pawnbroker when the need for the property for criminal investigative purposes or evidence in a trial has ended. *G & G Jewelry,* 989 F.2d at 1102. The remaining provisions of § 21647 would then resolve the right to possession and enjoyment of the property. *Id.*

This interpretation of § 21647 does not control the instant case. First, the issue before us in *G & G Jewelry* was whether § 21647's 90-day hold prohibited a police officer from seizing allegedly stolen property for evidentiary purposes-not what the police officer must do with the property after the criminal proceedings are complete. *See Export Group v. Reef Indus., Inc.,* 54 F.3d 1466, 1472 (9th Cir.1995) (statements not necessary to the decision are dicta and thus are not binding precedent). Second, although *G & G Jewelry* relied upon Financial Code § 21206.7 in holding that the California legislature intended to leave the police the option of seizing property for evidentiary purposes, we did not discuss Financial Code § 21206.8, which explicitly governs the disposal of stolen property that has been seized from a pawn-broker (as opposed to having been placed on hold).

For these reasons, Sanders' reliance upon *G & G Jewelry* is misplaced. Here, Michel did not place the allegedly stolen jewelry on hold pursuant to Business & Professions Code § 21647; instead he seized the pawned property and provided Sanders with a receipt pursuant to Financial Code § 21206.7. Because Financial Code § 21206.8 and Penal Code §§ 1407–13 directly address the disposal of stolen property seized from a pawnbroker and remaining in the custody of the police, we conclude that the above provisions govern the disposal of the seized property in the instant case.

### 2.

■ Therefore, we must decide whether the above procedures comply with procedural due process. Sanders appears to claim that these procedures fail to provide him with adequate due process because they neglect to provide him with pre-deprivation notice and a hearing. This argument is flawed for several reasons.

First, Sanders' argument is premised almost entirely on his erroneous interpretation of California statutory requirements. As discussed above, California provides for the disposition of property seized from a pawnbro-

**14.** These provisions provide as follows:

> (c) Whenever property that is in the possession of a pawnbroker, secondhand dealer, or coin dealer is subject to a hold and the property is no longer required for the purpose of criminal investigation, the law enforcement agency that placed the hold on the property shall undertake the following:
>
> (1) With respect to the property being held, if the law enforcement agency has no knowledge of the property on hold being reported as stolen, the property shall be released.
>
> (2) If a law enforcement agency has knowledge that property has been reported stolen, the law enforcement agency shall give written notification to the person who reported the stolen property of the name and address of the pawnbroker, secondhand dealer, or coin dealer holding the property, authorize the release of the property to that person, and advise the person that the law neither requires nor prohibits payment of a fee or any other condition in return for the surrender of the property. A copy of the notice with the address of the claimant deleted shall be mailed to the pawn-broker, secondhand dealer, or coin dealer who is in possession of the property. The person who reported the stolen property shall present a police hold release to the pawnbroker, secondhand dealer, or coin dealer prior to the person receiving the item. Notwithstanding the foregoing, if the alleged owner does not choose to participate in the prosecution of an identified alleged thief, the alleged owner shall pay the pawnbroker, secondhand dealer, or coin dealer the "out of pocket" expenses paid in the acquisition of the allegedly stolen property in return for the surrender of the property. If no action is taken to recover the property by the person who reported the property stolen within 60 days after the date that the notice was mailed, or if the property was not placed on hold, 60 days after a law enforcement officer advised the pawnbroker, secondhand dealer, or coin dealer that the property may be stolen property, the pawnbroker, secondhand dealer, or coin dealer in possession of the property may treat the property as regularly acquired in the due course of business.
>
> Cal. Bus. & Prof.Code § 21647(c).

ker pursuant to Financial Code § 21206.8 and Penal Code § 1413(b) without first returning the property to the pawnbroker.

Second, Sanders ignores the fact that the initial deprivation of property has already occurred and complied with due process. In arguing that he is entitled to pre-deprivation notice and a hearing, Sanders relies upon due process standards formulated for the initial deprivation of property in a civil context. He is correct that "[o]rdinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978). *See also Good*, 510 U.S. at 48, 114 S.Ct. at 498 ("Our precedents establish the general rule that individuals must receive notice and an opportunity to be heard before the Government deprives them of property."). Here, however, for the reasons discussed *supra* § III, the initial deprivation of Sanders' possessory interest in the jewelry complied with procedural due process because it complied with the Fourth Amendment.

Consequently, Sanders' claim becomes a claim that after an initial constitutional deprivation of his interest in the property, and prior to the final deprivation of his interest in the property, the government must return the property to him rather than providing him with a post-deprivation notice and a hearing. Sanders cites no case, nor can we find any case, which would support such an argument. Every case in which pre-deprivation notice and a hearing were not required the issues presented were when the post-deprivation hearing must occur, and whether the notice and hearing were adequate in substance. *See, e.g., FDIC v. Mallen*, 486 U.S. 230, 240, 108 S.Ct. 1780, 1787, 100 L.Ed.2d 265 (1988) (where pre-suspension hearing not required, issues presented were whether post-seizure hearing delay violated due process and whether lack of guarantee of an opportunity to present oral testimony renders hearing inadequate); *United States v. Eight Thousand Eight Hundred and Fifty*

*Dollars ($ 8,850) in U.S. Currency*, 461 U.S. 555, 562, 103 S.Ct. 2005, 2010, 76 L.Ed.2d 143 (1983) (where pre-seizure notice and hearing not required for customs forfeiture, issue presented is whether delay in filing post-seizure civil forfeiture action violated plaintiff's right to a hearing at a meaningful time).

Therefore, Sanders' argument that due process required the return of the seized property to him, rather than post-seizure notice and opportunity for a hearing is meritless. Moreover, Sanders asserts no challenge to the adequacy of the notice and hearing provided by the statutory procedures set forth in Financial Code § 21206.8 and Penal Code § 1413(b).

### 3.

Lastly, we turn to Sanders' contention that the above procedures were not complied with in this case. Sanders argues that he asserted a claim to the property by mailing Michel the form entitled Release to Seizing Officer, but that he was not given a hearing.

We agree that on this record, the district court erred in concluding that the City had complied with the statutory procedures.[15] It is undisputed that Michel sent Sanders a certified letter dated January 12, 1994, informing Sanders that Moore had requested the release of the seized property and had signed a declaration of ownership, a copy of which was enclosed with the letter. The letter also states:

California law provides that you be given an opportunity to be heard as to why such property should not be delivered to the person claiming ownership. You have fifteen (15) days from receipt of this letter to contact Detective M. Michel of the San Diego Police Department, telephone number 495–7963, if you desire to be heard as to why the property should not be delivered to the person claiming ownership.

In the event you do not contact the San Diego Police Department within this peri-

15. The district court held that "[s]ince the undisputed facts indicate that Defendants provided this notice and opportunity for hearing, Defendants are entitled to summary judgment on Plaintiff's procedural due process claims."

od, the property will be released to the person claiming ownership.[16]

It is also undisputed that Sanders signed for the letter on January 19, 1994, and on February 3, 1994, within fifteen days of receipt of Michel's letter, sent Michel two documents by certified mail. One of these documents, entitled "Release to Police Officer of Property Placed on Hold," states in relevant part:

Dear Det. Michel

I am requesting that the above described property seized on Dec. 10, 1993 at 12:45 p.m. Ticket # s 134 & 135 ... being no longer needed for evidentiary use at this time, be returned to Golden Rule Pawn Brokerage forthwith.

This document appears to comply with Officer Michel's January 12, 1994 letter. Sanders contacted Michel within fifteen days, and states that he requests that the seized property be returned to him.

We believe that, interpreting this letter in the light most favorable to Sanders, this letter may be construed as asserting a claim to the property under either Financial Code § 21206.8 or Penal Code § 1413(b), particularly in light of the fact that Michel's letter merely informs Sanders that he must contact Michel-it does not prescribe how Sanders must formulate his request "to be heard as to why the property should not be delivered to the person claiming ownership." In the absence of any explanation by the City as to why Sanders' request to have the property returned to him was disregarded, and as to why the review of the clerk's decision by the magistrate or judge as mandated by § 1413(b) did not occur, summary judgment was inappropriate.

In sum, we reverse the district court's grant of summary judgment on Sanders' claim that he was denied the statutorily mandated review by a magistrate or judge of the clerk's decision to return the property to its owner. On the factual record before us, there is a disputed issue of material fact regarding whether Sanders asserted a claim

to the property, thereby requesting a hearing that he did not receive. Therefore, we remand to the district court for consideration of Sanders' remaining procedural due process claim.

## CONCLUSION

For the foregoing reasons, we AFFIRM in part and REVERSE and REMAND in part.

---

16. Financial Code § 21206.8 requires that the pawnbroker be given ten days within which to respond and assert a claim. It appears that Michel sent this letter pursuant to Penal Code § 1413(b), which requires that the pawnbroker be given fifteen days within which to assert a claim to the property.