# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2668

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Ronnie Ladale Anderson, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 13, 2003

Filed: August 11, 2003

_____

Before HANSEN,[1] Chief Judge, RICHARD S. ARNOLD, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Ronnie Ladale Anderson pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and was sentenced to 100 months imprisonment. He appeals his conviction, arguing the district court[2] improperly

---

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

[2]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri, sitting by designation in the Northern District of Iowa.

denied his motion to suppress the firearm. Anderson also appeals his sentence, contending the district court improperly applied a four-level sentencing enhancement pursuant to United States Sentencing Guideline (U.S.S.G.) § 2K2.1(b)(5) for using or possessing the firearm in connection with another felony offense. We affirm.

I

On July 29, 2001, dispatchers in the Des Moines, Iowa, area received 911 calls from at least three different individuals saying that a black, bald trucker was stopped on the shoulder of eastbound Interstate 80. They described the man as walking along the shoulder with a gun in his hand. The witnesses varied in their descriptions of what he was doing with the gun; some said he was walking towards another stopped truck, some said he was waving the gun. All the witnesses described the man as wearing glasses and a brown shirt. The witnesses' descriptions of the truck were the same; a semi tractor-trailer with a burgundy cab and white box-type trailer. They offered slightly different descriptions of what was written on the trailer, including "supersaver," "supertrain," "super savers," and "super serve." The callers all described the location of the suspect as somewhere between mile markers 232 and 237 in the eastbound lane of Interstate 80.

Jim Schmidt, a driver for the Schneider National Truck Lines, called 911 and told the dispatcher a black trucker had been on the radio threatening a female trucker who was also driving through the Des Moines area. According to Schmidt, he and other truckers in the area came to her defense on their radios and told the abusive trucker to stop. Schmidt described the suspect as enraged and "crazy." Schmidt told the dispatcher the suspect threatened Schmidt and others and was driving eastbound on Interstate 80.

The other callers who saw the bald black man with the gun did not identify themselves. Soon after Schmidt's call, one of the initial anonymous callers, a trucker,

called back a second time and told the dispatchers the suspect was back on the road, driving eastbound on Interstate 80. This time, the caller was talking to the suspect on the radio at the same time he was on the phone to the dispatcher, and he relayed the suspect's violent threats to the dispatcher.

Officers from three police departments were dispatched to the area and in short order spotted a truck with a maroon cab pulling a white trailer with "Super Service, Inc." written on the side. The truck was approximately thirty miles east of the location reported by the callers. The driver, Anderson, fit the physical description of the man described by the callers but was wearing a white shirt and no glasses.

Three officers turned on their lights but Anderson didn't stop. One trooper drove his cruiser in front of Anderson's truck, but Anderson swerved around him. The trooper had to speed up and change lanes several times to keep in front of Anderson's truck. After a chase, the three cruisers forced Anderson up an off-ramp and to a stop. The officers approached the cab with their guns pointing at Anderson and ordered him out. After some difficulty with his seatbelt, he exited the cab. Anderson refused the officers' orders to get on the ground, so the officers forced him to the ground and handcuffed him.

After his arrest the officers asked him where the gun was, and Anderson denied having a gun. The officers searched the cab and found a loaded .38 semi-automatic pistol under the driver's seat. They also conducted a so-called North American Standard Level III Inspection and found Anderson in violation of several safety regulations, including: an incomplete log, driving with a suspended Virginia license, and alcohol (three bottles of wine) in the cab. Because Anderson had been convicted in Tennessee of two felonies (a fact he does not contest here) he was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), as well as possessing a firearm with an obliterated serial number in violation of 18 U.S.C. § 922(k).

Anderson filed a motion to suppress the gun and a magistrate judge held a hearing. The magistrate judge recommended denying the motion and the district court agreed, adopting the recommendation and denying the motion. Anderson entered a conditional plea of guilty on the first count, reserving the right to appeal the suppression ruling. The government dismissed the § 922(k) charge.

II

Anderson first challenges the district court's denial of his motion to suppress the gun. The district court's denial of a defendant's motion to suppress is reviewed de novo, and the underlying factual determinations are reviewed for clear error, "giving 'due weight' to the inferences of the district court and law enforcement officials." United States v. Replogle, 301 F.3d 937, 938 (8th Cir. 2002). In "reviewing the denial of a motion to suppress, we must examine the entire record, not merely the evidence adduced at the suppression hearing." United States v. Martin, 982 F.2d 1236, 1240-41 n.2 (8th Cir. 1993).

Anderson argues the officers did not have probable cause to search his truck. An officer has probable cause when he or she "personally knows or has been reliably informed of sufficient facts to warrant a belief that a crime has been committed and that the person to be arrested committed it." United States v. Crossland, 301 F.3d 907, 911 (8th Cir. 2002). "We assess probable cause from the viewpoint of a reasonably prudent police officer, acting in the circumstances of the particular case. We remain mindful that probable cause is a practical, factual, and nontechnical concept, dealing with probabilities." Id.

Anonymous tips as the bases for searches are treated with some mistrust by the courts. Anderson likens this case to Florida v. J.L., 529 U.S. 266 (2000), in which a lone anonymous caller reported that a young black man, who was standing at a bus stop wearing a plaid shirt, was carrying a concealed weapon. The Supreme Court

held there was inadequate information in the single anonymous call to support the search because the call did not show the caller had observed the crime (possession of a concealed weapon) and the identifying information was too vague.

We find J.L. materially distinguishable and inapplicable. At least three (and it appears from the record there were more) callers independently called 911 and reported a bald black man driving a truck just like Anderson's walking down the eastbound shoulder of Interstate 80 with a gun in his hand. One identified caller provided additional information indicating the suspect had violent intentions toward an unknown female driver. Multiple callers confirmed the time, approximate location, and specific nature of the crime, and all claimed to have witnessed it firsthand. Their relatively precise and consistent descriptions of Anderson and his vehicle were corroborative of one another.

Anderson points to the inconsistencies between the witnesses' descriptions as evidence they were untrustworthy. Indeed, there were some inconsistencies; white shirt versus brown, glasses versus no glasses, etc. The variations were minor, however, and the crucial information (firsthand observation of a crime and sufficient description to narrow it down to Anderson) were the same. The inconsistencies are insufficient to make the callers' reports untrustworthy, or the officers' actions unreasonable in apprehending and searching Anderson based on those reports. With multiple witnesses corroborating both Anderson's description and pertinent information of a crime, we hold the callers provided enough information to be trustworthy and police were reasonable to rely upon it. United States v. Wheat, 278 F.3d 722, 731-33 (8th Cir. 2001) (affirming search based upon single anonymous tip where caller reported seeing the crime firsthand and described the perpetrator in detail.) We therefore conclude the district court did not err in denying Anderson's motion to suppress. His conviction is affirmed.

III

Anderson's sentence was enhanced four levels for possessing a firearm in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(5). Anderson argues there is insufficient evidence he committed another felony offense to support the enhancement. We review the district court's legal conclusion concerning the application of the sentencing enhancement de novo and its factual findings for clear error. United States v. Chavarria-Cabrera, 272 F.3d 1049, 1050 (8th Cir. 2001).

Section 2K2.1(b)(5) of the Guidelines says, in pertinent part, "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." U.S.S.G. § 2K2.1(b)(5). Application Note 7 to § 2K2.1 defines "felony offense" as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or conviction obtained." U.S.S.G. § 2K2.1 app. 7.

The district court found Anderson violated Iowa Code §§ 708.1 and 708.2. Section 708.1 of the Iowa Code defines the crime of assault, in relevant part, as when a person, without justification, "[i]ntentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another." Iowa Code § 708.1(3). Section 708.2 in turn designates an assault to be an "aggravated misdemeanor" if a dangerous weapon is used or displayed in connection with the assault. Iowa Code § 708.2(3). An "aggravated misdemeanor" is punishable by up to two years imprisonment, Iowa Code § 903.1(2), and therefore qualifies as a "felony offense" for the purposes of the § 2K2.1(b)(5) enhancement.

The issue we must address, then, is whether there was sufficient evidence Anderson displayed, "in a threatening manner[,] any dangerous weapon toward another." The district court found Anderson's conduct met this standard based on

"testimony that the defendant was walking down the road pointing a gun at traffic; that he was using a gun in a threatening manner along the highway and other instances which would show he was in violation of the Iowa statutes." Anderson argues there was no evidence he actually *pointed* the firearm at traffic. Even if that is correct, however, he does not prevail if there is sufficient evidence he *displayed* the firearm in a threatening manner. Iowa Code § 708.1(3).

We conclude there was sufficient evidence to support the conclusion Anderson displayed his firearm in a threatening manner to people on the highway. Specifically, the fact and content of the 911 calls made by passing motorists indicates Anderson displayed the firearm in a threatening manner. That Anderson's display was threatening is corroborated by the truckers, including Jim Schmidt, who reported Anderson was making threats over the radio. This was sufficient evidence to find Anderson committed the aggravated misdemeanor of assault under Iowa law and, therefore, "another felony offense" pursuant to 2K2.1(b)(5).[3]

IV

We hold the district court did not err when it denied Anderson's motion to suppress the firearm. We further conclude the evidence supports a finding Anderson used or possessed the firearm in connection with another felony offense. Therefore we affirm the conviction and sentence imposed by the district court.

---

[3]The district court also found the § 2K2.1(b)(5) enhancement was supported by evidence Anderson violated Iowa Code § 708.6 (intimidation with a dangerous weapon, a.k.a. terrorism). However, as we find the evidence supports the enhancement on the basis of Iowa Code §§ 708.1 and 708.2, we need not address this ground.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.