# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2699

_____

United States of America,

   Appellee,

  v.

Theotis A. Muhammad,

   Appellant.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States
District Court for the Western
District of Missouri.

_____

Submitted: March 12, 2010
Filed: May 11, 2010

_____

Before BYE, COLLOTON and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Theotis Muhammad was indicted on one count of aiding and abetting the armed robbery of a credit union, in violation of 18 U.S.C. §§ 2113(a), (d), and 2, and one count of aiding and abetting the use of a firearm during a crime of violence, the robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. Before trial, Muhammad moved to suppress evidence seized during a pat-down search of his person conducted

less than two hours after the robbery. The district court[1] denied the motion, and a jury convicted Muhammad on both counts. Muhammad appeals the denial of the motion to suppress. For the following reasons, we affirm.

## I.    BACKGROUND

On May 28, 2008, at approximately 11:15 a.m., an armed robbery occurred at the United Labor Credit Union in Kansas City, Missouri. When FBI Special Agent Kevin McCrary arrived at the credit union at 11:50 a.m., officers from the Kansas City Police Department and FBI special agents had already begun to investigate the robbery. Officers told Agent McCrary that a man, later determined to be Theotis Muhammad, came into the credit union minutes before the robbery and asked for the key to the restroom. Muhammad then left the credit union and entered a common area in the building where the credit union is located, which housed the restroom. A short time later, a second man, later determined to be Yacub Williams, entered the credit union carrying a handgun and wearing a black hooded sweatshirt and gloves. Williams approached a teller, brandished the handgun, and demanded cash. Williams took more than $2,000 and fled the credit union, running toward the nearby Park Highlands apartments. Moments later, Muhammad returned the restroom key to the credit union and left, heading in the same direction as Williams.

Agent McCrary eventually learned that officers were speaking with two men at the Park Highlands apartments who matched witnesses' descriptions of the robber and the man who borrowed the key to the restroom. Agent McCrary then viewed the credit union's surveillance videos. The videos showed a clear image of Muhammad's face and also showed Muhammad talking to Williams in the common area

---

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable Sarah W. Hays, United States Magistrate Judge for the Western District of Missouri.

immediately before Williams robbed the credit union. Agent McCrary inferred that Muhammad was casing the credit union for Williams.

At approximately 12:30 p.m., Agent McCrary arrived at the apartment complex and approached the two men with whom officers had been speaking, Muhammad and Williams. Agent McCrary recognized Muhammad as the man who requested the restroom key and noticed that Williams was wearing dark black Nike Air Jordan shoes with a royal blue stripe, which matched the shoes the robber wore. Agent McCrary asked Muhammad if he was the man who entered the credit union moments before the robbery. Muhammad confirmed that he was in the credit union before the robbery and that he had borrowed the key to the restroom.

Agent McCrary handcuffed Muhammad and performed a pat-down search. Agent McCrary testified that he performed the search "to determine whether or not [Muhammad] had a weapon." During the pat-down, Agent McCrary felt a "hard object" approximately four inches long and three inches wide in the back pocket of Muhammad's pants. He asked Muhammad what the object was, and Muhammad stated that it was his wallet. Observing that the object "felt like an item that could conceal a weapon," Agent McCrary removed the object from Muhammad's pocket. The object turned out to be a bi-fold leather wallet that Agent McCrary testified was "bulging with cash," such that he could see large amounts of cash without opening the wallet. Agent McCrary seized the cash and counted $541. He then matched five of the $20 bills in Muhammad's wallet to five "bait bills" with recorded serial numbers that were stolen during the robbery and placed Muhammad under arrest.

A federal grand jury returned an indictment charging Muhammad with aiding and abetting Williams's robbery of the credit union and Williams's use of the handgun during the robbery. Muhammad moved to suppress the evidence seized during the pat-down search, arguing that the search exceeded the scope of a protective search

allowable under the Fourth Amendment.[2] The district court denied the motion, and a jury convicted Muhammad on both counts. The district court sentenced Muhammad to 180 months' imprisonment. Muhammad appeals the denial of his motion to suppress.

## II. DISCUSSION

On appeal, Muhammad concedes that Agent McCrary was permitted to conduct a limited pat-down search for weapons under *Terry v. Ohio*, 392 U.S. 1 (1968). Muhammad argues that Agent McCrary impermissibly expanded the scope of the search by removing the wallet from Muhammad's pocket and seizing the cash protruding from the wallet. We must first determine whether Agent McCrary was permitted to remove the wallet from Muhammad's pocket. If Agent McCrary lawfully removed the wallet, we must then decide whether he was permitted to seize the cash protruding from the wallet.

When considering a motion to suppress evidence, we review the district court's findings of facts for clear error, and we review de novo whether the search violated the Fourth Amendment. *United States v. Inman*, 558 F.3d 742, 745 (8th Cir.) (citing *Ornelas v. United States*, 517 U.S. 690, 698-99 (1996); *United States v. Olivera-Mendez*, 484 F.3d 505, 509 (8th Cir. 2007)), *cert. denied*, 558 U.S. ---, 130 S. Ct. 304 (2009). "Because this case proceeded to trial, we examine the entire record, not merely the evidence adduced at the suppression hearing, in considering the denial of [the] motion to suppress." *Id.* (citing *United States v. Anderson*, 339 F.3d 720, 723 (8th Cir. 2003)).

---

[2]Muhammad also moved to suppress certain statements he made to law enforcement officers, but that issue is not before us on appeal.

-4-

Under *Terry*, a law enforcement officer may conduct a warrantless pat-down search "for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citing *Terry*, 392 U.S. at 30). "Because the 'sole justification' for such a search is the protection of the officer and others, its scope must be confined to a search reasonably designed to discover concealed weapons." *Id.* (quoting *Terry*, 392 U.S. at 29). An officer may, however, seize other evidence discovered during a pat-down search for weapons as long as the search "stays within the bounds marked by *Terry*." *United States v. Hanlon*, 401 F.3d 926, 930 (8th Cir. 2005) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)).

Muhammad contends that because Agent McCrary knew that the object in Muhammad's back pocket was not a weapon or an object concealing a weapon, Agent McCrary could not lawfully remove the wallet from Muhammad's pocket. *See Hanlon*, 401 F.3d at 930 (concluding that an officer may not seize an item from a person's pocket "after having concluded that no weapons are present" (citing *Dickerson*, 508 U.S. at 378)). The record does not support this assertion. Agent McCrary testified that during a pat-down search it is often difficult to tell whether an object is a weapon or might conceal a weapon merely by touching the object. He stated that officers must generally "pull [the suspicious object] out and actually inspect it" to determine whether the object presents a safety concern. He further testified that he was not certain what the hard four-inch long and three-inch wide object in Muhammad's pocket was, but he said that the item "felt like an object that could conceal a weapon." The district court credited Agent McCrary's testimony, and we find no basis in the record to disagree with the district court. *See id.* (stating that a district court's decision to credit testimony is "virtually unreviewable on appeal" (quoting *United States v. Marks*, 328 F.3d 1015, 1018 (8th Cir. 2003))). Thus, we reject Muhammad's assertion that Agent McCrary knew that the object in Muhammad's back pocket was not a weapon or an object concealing a weapon.

Furthermore, the pat-down search that Agent McCrary performed was reasonably designed to discover concealed weapons. *See Roggeman*, 279 F.3d at 577-78 (concluding that "[c]ourts are required to apply an objective test" to determine whether a protective search was justified). Muhammad concedes that Agent McCrary was permitted to perform a pat-down search to determine whether Muhammad was carrying a concealed weapon. Agent McCrary then reasonably determined that the four-inch long and three-inch wide "hard object" in Muhammad's back pocket could be a weapon or could conceal a weapon that presented a threat to officer safety, such as a knife, box cutter or razor blade. An objectively reasonable officer in Agent McCrary's situation would not be required to blindly accept Muhammad's assertion that the object he felt was a wallet rather than a weapon or an object that could conceal a weapon. *See Terry*, 392 U.S. at 23 ("[I]t would be unreasonable to require that police officers take unnecessary risks in the performance of their duties."). Indeed, a dangerous weapon such as a small knife, box cutter or razor blade could have been concealed in the wallet itself. Accordingly, this pat-down search stayed within the bounds of *Terry*, and the Fourth Amendment permitted Agent McCrary to remove the object from Muhammad's pocket. However, our inquiry does not end here. We must next decide whether Agent McCrary lawfully seized the cash protruding from the wallet.

"[S]earches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" *Dickerson*, 508 U.S. at 372 (citations omitted) (quoting *Thompson v. Louisiana*, 469 U.S. 17, 19-20 (1984) (per curiam)). One such exception is the plain-view doctrine. The plain-view exception allows officers to seize contraband or other evidence of a crime in limited situations. *See United States v. Clay*, 579 F.3d 919, 932 (8th Cir. 2009), *cert. denied sub nom. Stovall v. United States*, 559 U.S. ---, 78 U.S.L.W. 3481 (2010). Under the plain-view exception, officers may seize an object without a warrant if they are lawfully in a position from which they view the object,

the incriminating character of the object is immediately apparent, and the officers have a lawful right of access to the object. *Dickerson*, 508 U.S. at 375 (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990); *Texas v. Brown*, 460 U.S. 730, 739 (1983) (plurality opinion)); *see also United States v. Bustos-Torres*, 396 F.3d 935, 944 (8th Cir. 2005).

Because we conclude that Agent McCrary lawfully removed the wallet from Muhammad's pocket and Muhammad does not dispute that the cash was visible without opening the wallet, the first and third requirements of the plain-view exception are met. The only remaining question is whether the incriminating nature of the cash was immediately apparent to Agent McCrary. "Immediately apparent" in the Fourth Amendment context means that the officer performing the search has "probable cause to believe an item is incriminating." *United States v. Green*, 560 F.3d 853, 858 (8th Cir.) (citing *Skokos v. Rhoades*, 440 F.3d 957, 961 (8th Cir. 2006)), *cert. denied*, 558 U.S. ---, 130 S. Ct. 288 (2009); *Bustos-Torres*, 396 F.3d at 944-45 (citing *Dickerson*, 508 U.S. at 376). Probable cause does not require absolute certainty; it only requires "that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of the crime." *Green*, 560 F.3d at 858 (quoting *United States v. Garner*, 907 F.2d 60, 62 (8th Cir. 1990)).

Here, Agent McCrary had recently viewed the credit union's security videos and identified Muhammad entering and exiting the credit union and thereafter talking to Williams moments before Williams committed the armed robbery. Agent McCrary had been informed that Williams stole over $2,000 in cash and fled in the direction of the Park Highlands apartments and that Muhammad walked toward the same apartment complex after the robbery. Officers found Muhammad and Williams together at the apartment complex less than one hour after the robbery. Agent McCrary then saw cash protruding from Muhammad's wallet. While cash is not inherently incriminating, under these circumstances, Agent McCrary had probable

cause to believe that the cash protruding from the wallet was evidence of the robbery. *See Bustos-Torres*, 396 F.3d at 945. Thus, the plain-view exception permitted Agent McCrary to seize the cash, which then allowed him to confirm that five of the $20 bills were bait bills taken during the robbery. Accordingly, we conclude that the search and seizure Agent McCrary performed was proper.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Muhammad's motion to suppress the evidence.

_____