# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————————

No. 09-3540

————————

| | | |
|---|---|---|
| PPS, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Faulkner County, Arkansas; Karl | * | Appeal from the United States |
| Byrd, individually and in his | * | District Court for the |
| official capacity as Sheriff of | * | Eastern District of Arkansas. |
| Faulkner County, Arkansas; David | * | |
| Hall, individually and in his official | * | [PUBLISHED] |
| capacity as an Investigator with the | * | |
| Sheriff's Department of Faulkner | * | |
| County, Arkansas, | * | |
| | * | |
| Appellees. | * | |

————————

Submitted: September 21, 2010
Filed: January 12, 2011

————————

Before WOLLMAN, LOKEN, and HANSEN, Circuit Judges.

————————

HANSEN, Circuit Judge.

PPS, Inc. (PPS), the owner of the EZ Cash Pawn Shop in Little Rock, Arkansas (EZ), appeals the district court's[1] grant of summary judgment to the defendants in this 42 U.S.C. § 1983 case, claiming that Sergeant David Hall of the Faulkner County, Arkansas Sheriff's Office seized property from the pawn shop's inventory without a warrant and in violation of PPS's Fourth and Fourteenth Amendment rights. We affirm.

I.

We recite the facts from the record in the light most favorable to PPS, the nonmovant in this summary judgment disposition. See Dodd v. Jones, 623 F.3d 563, 566 (8th Cir. 2010). On September 15, 2007, Keadron Walker entered into a pawn agreement with PPS, under which Walker pawned a commercial grade Graco brand paint sprayer, serial number BA3166, as collateral for a $300 advance from EZ. The following week, James Baldwin reported to the Faulkner County Sheriff's Office that Walker, a former employee, had refused to return a pickup truck and a commercial paint sprayer that Mr. Baldwin had allowed him to use as part of his employment. Mr. Baldwin reported to the Sheriff's Office that Walker's mother had informed him that Walker had pawned the paint sprayer at EZ.

During business hours on September 27, 2007, Sergeant Hall and Dalton Elliott[2], investigators for the Faulkner County Sheriff's Office, met Mr. Baldwin at EZ. Sergeant Hall inquired of Robert Casto, Jr., the manager on duty at the pawn shop, whether the sprayer was on the premises, and Mr. Casto confirmed that it was. Sergeant Hall explained that the sprayer was suspected to be stolen property and requested that the pawn shop turn over the sprayer for the officers' investigation into

---

[1]The Honorable William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

[2]Mr. Elliott is not a party to this suit.

the theft claim. Mr. Casto resisted releasing custody of the sprayer, and Sergeant Hall told Mr. Casto that he could arrest Casto if he refused. Mr. Casto then called Douglas Braswell, PPS's CEO and part owner, and told him of Sergeant Hall's demand to take the sprayer. Braswell told Mr. Casto to release the sprayer rather than get arrested.

Sergeant Hall provided Mr. Casto with a preprinted form entitled Faulkner County Sheriff's Office Pawn Shop Seizure Report/Property Receipt. The form stated that Sergeant Hall was "conducting an official investigation of a Theft of Property" and the possessor "consent[ed] to transfer possession of the listed articles to" Sergeant Hall. (J.A. at 21.) By signing the form, Mr. Casto acknowledged that he "consider[ed] this form as [his] official receipt from the Faulkner County Sheriff's Office and underst[ood] that the listed property shall be stored for safekeeping in the Property Room of the Faulkner County Sheriff's Office until the identity of the rightful owner [could] be established." (Id.) Upon taking possession of the sprayer, Sergeant Hall took the sprayer to the parking lot of the pawn shop and gave it to Mr. Baldwin. Mr. Baldwin signed a Faulkner County Sheriff's Department Evidence Receipt Form, which stated that Baldwin "acknowledge[d] receipt of [the sprayer] and [he was] aware that the [sprayer] may be returned to the Faulkner County Sheriff's Department upon request for the purpose of having the [sprayer] in court for evidence." (J.A. at 83.) Sergeant Hall also completed an Evidence Report listing Baldwin's address as the place of storage for the sprayer and showing that the chain of possession passed from Sergeant Hall to Mr. Baldwin on the date that Sergeant Hall recovered the sprayer from PPS.

Nine months later on June 30, 2008, PPS filed this 42 U.S.C. § 1983 action against Sergeant Hall, Sheriff Karl Byrd, and Faulkner County. At that time, Mr. Baldwin still had possession of the sprayer, and no charges had been filed against Walker for theft of the sprayer. In its complaint, PPS alleged that Sergeant Hall had violated its rights under the Fourth and Fourteenth Amendments of the United States Constitution, that Sheriff Byrd was responsible for the development of the policies

-3-

and procedures that allowed Sheriff's Office employees to seize property in violation of the Fourth and Fourteenth Amendments, and that Faulkner County, as the employer and ultimate authority over the Sheriff's Office, was responsible for the policies. PPS also asserted state law claims under the Arkansas Constitution and the Arkansas Civil Rights Act.

Following discovery, the district court granted summary judgment to all of the defendants. The district court found no basis for municipal liability against the County or the Sheriff in his official capacity, as there was no policy or custom of condoning illegal seizures. It also found that Sheriff Byrd had no knowledge of Sergeant Hall's actions, so there was no basis for individual liability against Sheriff Byrd. The district court concluded that there was no Fourth Amendment violation based on the consent and exigent circumstances exceptions to the warrant requirement. Applying the Matthews[3] balancing test to the Fourteenth Amendment claim, the court determined that PPS would have been entitled to predeprivation procedures but that its consent to the seizure waived any due process claim. Finally, the court concluded that even if PPS did not waive its right to predeprivation procedures, that right was not clearly established such that Sergeant Hall was entitled to qualified immunity to the extent there was a Fourteenth Amendment violation.

PPS appeals, arguing: 1) that the district court erred in granting summary judgment when there existed disputed material facts; 2) that the seizure violated the Fourth Amendment as it was not consensual or supported by exigent circumstances; and 3) that its Fourteenth Amendment right to a predeprivation hearing was not obviated by a consensual seizure. PPS has not appealed the district court's grant of summary judgment in favor of Sheriff Byrd and Faulkner County, and we focus our discussion only on the individual claims against Sergeant Hall.

---

[3]Matthews v. Eldridge, 424 U.S. 319 (1976).

## II.

We review *de novo* the district court's grant of summary judgment in favor of Sergeant Hall, viewing the record evidence in the light most favorable to PPS as the nonmovant. See Dodd, 623 F.3d at 566. Summary judgment is appropriate if there are no genuine issues of material fact in dispute such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### A. Fourth Amendment

PPS challenges Sergeant Hall's seizure of the sprayer without a warrant as a violation of its Fourth Amendment right to be free from unreasonable seizures. See U.S. Const. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ."). The parties agree that PPS's possessory interest in the sprayer was entitled to the protections of the Fourth Amendment. See Maryland v. Macon, 472 U.S. 463, 469 (1985) ("A seizure [for purposes of the Fourth Amendment] occurs when 'there is some meaningful interference with an individual's possessory interests' in the property seized." (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984))); cf. Landers v. Jameson, 132 S.W.3d 741, 751 (Ark. 2003) (under Arkansas law, pawn broker has a security or lien interest in pawned property sufficient to entitle it to due process rights). Thus, the warrantless seizure of the sprayer violated PPS's Fourth Amendment rights unless the seizure was supported by one of what are commonly referred to as the warrant exceptions, including *inter alia* the plain view doctrine, consent, and exigent circumstances. See Minnesota v. Dickerson, 508 U.S. 366, 372 (1993) ("[S]eizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." (internal marks omitted)).

The district court concluded that consent and exigent circumstances obviated the need for a warrant, but it rejected Sergeant Hall's contention that the plain view doctrine applied as well. In a footnote, the district court rejected application of the plain view doctrine because the paint sprayer was in a back room behind a closed door and not in view of the pawn shop's sales floor. This interpretation of the doctrine reflects its common misunderstanding. The Supreme Court, in explaining the reasoning behind the plain view doctrine, has noted that "'[i]t is important to distinguish "plain view," as used . . . to justify *seizure* of an object [which implicates the Fourth Amendment], from an officer's mere observation of an item left in plain view,'" which does not implicate the Fourth Amendment. Horton v. California, 496 U.S. 128, 133 n.5 (1990) (quoting Texas v. Brown, 460 U.S. 730, 738 n.4 (1983) (plurality)). The Fourth Amendment protects against two distinct governmental actions—unreasonable searches and unreasonable seizures. "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her . . . property." Id. at 133. As explained by the Supreme Court, the plain view doctrine really has no relevance to a search because it does not implicate any privacy concerns. "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." Id. (citing Arizona v. Hicks, 480 U.S. 321, 325 (1987)); see also United States v. Payne, 181 F.3d 781, 787 n.4 (6th Cir. 1999) ("There is no such thing as a 'plain-view search.'"). "If 'plain view' justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches." Horton, 496 U.S. at 134.

This is an important point because the Fourth Amendment does not prohibit all unwarranted seizures, only *unreasonable* ones. The reasonableness requirement necessarily requires a balancing of the competing interests, which in turn requires a consideration of the interests at stake. See Soldal v. Cook County, 506 U.S. 56, 71 (1992) ("As is true in other circumstances, the reasonableness determination [must] reflect a 'careful balancing of governmental and private interests.'" (quoting New

Jersey v. T.L.O., 469 U.S. 325, 341 (1985))). In the case of a seizure, it is only an individual's possessory rights in its property, not any privacy rights, that are balanced against the government's interest in effective law enforcement. See Delaware v. Prouse, 440 U.S. 648, 654 (1979) ("[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.").

The plain view doctrine stems from law enforcement's long-held authority to seize weapons or contraband found in a public place without a warrant. See Payton v. New York, 445 U.S. 573, 586-87 (1980). There is no invasion of privacy because the object is in plain view in a public place. Id. The only remaining interest is the individual's possessory interest, and the Supreme Court has determined that the intrusion on that interest occasioned by seizing contraband found in a public place "is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." Id. at 587.

So what of the seizure of property found not in a public place? Privacy rights protected by the Fourth Amendment prevent officers from entering private property to seize contraband that can be seen in plain view from outside the property, no matter how incriminating the contraband, see Coolidge v. New Hampshire, 403 U.S. 443, 468 (1971) (plurality) (stating that even "[i]ncontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect" does not allow officers to enter the premises and seize the object), unless the officers have a prior justification for being on the property, see Brown, 460 U.S. at 738 ("'[P]lain view' provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment."). "The theory of [the plain view] doctrine consists of extending to nonpublic places such as the home, where searches and seizures without a warrant are presumptively unreasonable, the police's longstanding authority to make warrantless seizures in public places of such objects as weapons and contraband." Hicks, 480 U.S. at 326-27. "'Plain view' is perhaps

better understood, therefore, not as an independent 'exception' to the warrant clause, but simply as an extension of whatever the prior justification for an officer's 'access to an object' may be." Brown, 460 U.S. at 738-39.

Focusing then on the officer's prior justification for being in a position to see the incriminating object, the plain view doctrine excuses the need for a warrant if the seizing officer is (1) "lawfully in a position from which [to] view the object, (2) the incriminating character of the object is immediately apparent, and (3) the officer[] ha[s] a lawful right of access to the object." United States v. Muhammad, 604 F.3d 1022, 1027 (8th Cir. 2010) (citing Dickerson, 508 U.S. at 375). Such seizures must still meet the probable cause standard. See Soldal, 506 U.S. at 69 ("For the plain-view cases clearly state that . . . seizures of effects that are not authorized by a warrant are reasonable only because there is probable cause to associate the property with criminal activity."). This three-part test reflects the balancing required by the reasonableness standard. When an officer, justified in his initial intrusion, seizes incriminating evidence to which he has lawful access, "there is a major gain in effective law enforcement" as compared "against the minor peril to Fourth Amendment protections." Coolidge, 403 U.S. at 467; see also id. at 468 (noting that "it would often be a needless inconvenience, and sometimes dangerous—to the evidence or to the police themselves—to require them to ignore [incriminating evidence seen in plain view] until they have obtained a warrant particularly describing it").

In a factually similar case, the Ninth Circuit applied the plain view doctrine to an officer's unwarranted seizure of pawned property reported to be stolen. See Sanders v. City of San Diego, 93 F.3d 1423 (9th Cir. 1996). Addressing a Fourth Amendment challenge to the officer's actions, the Ninth Circuit concluded that

> the Fourth Amendment permits the warrantless seizure of merchandise from a pawnbroker for investigatory purposes where (1) the police officer is lawfully on the premises, (2) the pawnbroker is required by statute to produce the pawned property for inspection, and (3) the

> examination of the property reveals that there was probable cause to believe it was stolen.

Sanders, 93 F.3d at 1427 (discussing the rule handed down in G & G Jewelry, Inc. v. City of Oakland, 989 F.2d 1093, 1101 (9th Cir. 1993)). Under the Ninth Circuit's analysis, the statute requiring the pawnbroker to produce the property for inspection met the requirement that the incriminating character of the seized item be immediately apparent. See G & G Jewelry, Inc., 989 F.2d at 1099 (noting that the statutorily required inspection revealed the camera's make, model, and serial numbers, such that "the evidence that the property was stolen was in plain view"). This analysis is similar to the general requirements for a plain view seizure adopted in this circuit. See Muhammad, 604 F.3d at 1027.

Turning to the facts of the case at hand, we begin with the fact that Sergeant Hall was lawfully on PPS's premises during business hours, and Mr. Casto consented to his presence. See Soldal, 506 U.S. at 65-66 (noting that if an officer enters a house through a valid consent, the officer's subsequent seizure of contraband or incriminating evidence in plain view does not violate the Fourth Amendment as long as there is probable cause and no illegal trespass); Skokos v. Rhoades, 440 F.3d 957, 961 (8th Cir. 2006) (applying plain view doctrine to officers' entry into a business during business hours and seizure of illegal counter top gambling machines). Even though Mr. Casto resisted turning the sprayer over to Sergeant Hall, he did not object to Sergeant Hall being in the pawn shop or viewing the sprayer. See United States v. Varner, 481 F.3d 569, 572-73 (8th Cir. 2007) (applying plain view doctrine to seizure of drug items seen in plain view after defendant consented to officer accompanying defendant's girlfriend to basement to retrieve cigarettes for him following his arrest). The record indicates that Mr. Casto had the pawn ticket for the sprayer out on the counter before Sergeant Hall even arrived at the pawn shop, that he confirmed that it was the sprayer that Mr. Baldwin had reported stolen, and that he took Sergeant Hall to the back room to view the sprayer without protest. These facts conclusively demonstrate that Sergeant Hall was lawfully in the place to see the sprayer and, via

Casto's consent, had lawful access to it. Mr. Casto's identification of the sprayer and Sergeant Hall's inspection, which included matching the serial number to that of the sprayer reported to be stolen, satisfied the need for the object's incriminating character to be immediately apparent. See G & G Jewelry, Inc., 989 F.2d at 1101 (holding that the officer's "examination revealed that there was probable cause to believe" that the property was stolen). The plain view doctrine justified Sergeant Hall's seizure of the sprayer. See Florida v. White, 526 U.S. 559, 565-66 (1999) (no Fourth Amendment violation when police seized vehicle from employer's parking lot without a warrant based on probable cause that vehicle had been used to transport drugs under Florida Contraband Forfeiture Act); G.M. Leasing Corp. v. United States, 429 U.S. 338 (1977) (no Fourth Amendment violation when officers seized vehicles without warrants from public streets, parking lots, and other open spaces in partial satisfaction of income tax assessments).

There remains the issue of whether Sergeant Hall seized the sprayer for a proper law enforcement purpose. See G & G Jewelry, Inc., 989 F.2d at 1101 (noting that a plain view seizure does not authorize officers to seize property for the purpose of turning it over to the person claiming rightful ownership). If Sergeant Hall seized the property as part of his investigation of the reported crime of theft, he would have been carrying out a valid law enforcement activity. See Sanders, 93 F.3d at 1427 (granting summary judgment on Fourth Amendment claim where it was undisputed that officer seized pawned property for investigatory purposes). If, on the other hand, Sergeant Hall seized the sprayer only to turn it over to Mr. Baldwin as the rightful owner absent a judicial determination of the proper owner's identity, he would not have been engaged in a proper law enforcement activity, and there would have been no governmental interest to balance against PPS's possessory interest when making the Fourth Amendment reasonableness inquiry. That is the scenario held to be unconstitutional in Landers, where the Arkansas Supreme Court held that use of Arkansas Code §§ 18-27-202 & 18-27-203 to remove property from a pawn shop and

-10-

turn it over to the party claiming rightful ownership violated the pawn shop's right to due process.  See 132 S.W.3d at 754.

But that is not what happened here.  Sergeant Hall gave Mr. Casto a Pawn Shop Seizure Report/Property Receipt stating that the sprayer was being seized for purposes of investigating the crime of theft and that it would be kept in the Sheriff's Office property room.  Sergeant Hall testified in his deposition that he turned the sprayer over to Mr. Baldwin for purposes of holding the property only after he realized how large the sprayer was and determined it would not fit in the property room.  Sergeant Hall also gave Mr. Baldwin a Receipt of Property form in which Mr. Baldwin acknowledged that he was obligated to turn the sprayer over to the Sheriff's Office for evidentiary purposes.  Mr. Baldwin also signed an Evidence Receipt form, which noted the transfer of the chain of possession from Sergeant Hall to Mr. Baldwin.  In these circumstances,  Sergeant Hall's initial seizure was for the proper law enforcement purpose of investigating a reported crime.  Cf. Landers, 132 S.W.3d at 752 (recognizing that "placing a 'hold' on pawnshop property that matches stolen property can be a valuable law enforcement tool").  Having determined that the Sheriff's Department had a valid law enforcement need to take control of the property, we leave to law enforcement the decision how best to complete that task.   Whether the Sheriff's Office placed a hold on the property and left it in PPS's possession, stored it in the Sheriff's Office property room, or gave it to Mr. Baldwin for safekeeping is a law enforcement decision not addressed by the Fourth Amendment.

PPS argues that Sergeant Hall could have left his partner, Inspector Elliott, at the pawn shop while he went to get a warrant authorizing the seizure of the sprayer. In G & G Jewelry, Inc., the pawnbroker made a similar argument that the plain view doctrine contained an exigent circumstances requirement; otherwise, an officer would never need to obtain a warrant before seizing property from a pawn shop that is reported to be stolen.   The Ninth Circuit rejected the argument because it misconstrued the principles underlying the plain view doctrine.  "[R]equiring police

to obtain a warrant once they have obtained a first-hand perception of . . . stolen property . . . generally would be a 'needless inconvenience.'" G & G Jewelry, Inc., 989 F.2d at 1100 (quoting Brown, 460 U.S. at 739). This is part of the reasonableness inquiry, which balances the intrusion on an individual's Fourth Amendment rights, here the interest of maintaining dominion over property in which PPS has a recognizable interest, against the government's interest in efficient law enforcement. Neither exigency nor inadvertence is an element of the plain view doctrine. See Horton, 496 U.S. at 137-38 (expressly rejecting the Coolidge plurality's view that the plain view doctrine applied only when the officer inadvertently finds the incriminating object in plain view). Where the elements of the plain view doctrine are met, the fact that the officers could have left and obtained a warrant does not invalidate the justification for seizing the property.

PPS asserts that an officer would never need a warrant to seize pawned property that is reported stolen and that such seizures will greatly hinder a pawn shop's ability to carry on its business. That statement is true only to the extent the elements of the plain view doctrine are met that justify the seizure and only as it relates to the protections provided by the Fourth Amendment. Here, Mr. Casto admitted to Sergeant Hall that the sprayer in the pawn shop's possession matched the description of the one reportedly stolen as soon as Sergeant Hall entered the pawn shop. Mr. Casto had the pawn ticket on the counter, and he voluntarily took Sergeant Hall to view the sprayer. In these circumstances, we emphasize that there was no search; PPS challenges only the sprayer's seizure. Cf. S & S Pawn Shop, Inc. v. City of Del City, 947 F.2d 432, 441 (10th Cir. 1991) (expressing concern that a *search* of a pawn shop without a warrant pursuant to an administrative inspection procedure following an officer's comparison of a pawn shop's transaction reports to reports of stolen property "gives cause for grave constitutional concern"). Further, state law can, and often does, provide procedures that law enforcement personnel must follow when dealing with property reported to be stolen and found in a pawn shop's possession. Cf. G & G Jewelry, Inc., 989 F.2d at 1101 (considering whether an officer's seizure from a pawn

shop violated California law after concluding that it did not violate the Fourth Amendment). All we conclude today is that the seizure in this case did not violate PPS's rights under the Fourth Amendment.

Our conclusion that the seizure was supported by the plain view doctrine forecloses PPS's argument that the district court improperly made fact-findings in granting summary judgment to the defendants. Whether the person Mr. Casto contacted was an attorney or Mr. Casto's boss is immaterial to our conclusion that Sergeant Hall was lawfully on the premises and properly seized the sprayer under the plain view doctrine. Likewise, the district court did not need to find that Mr. Baldwin was in fact the owner of the property before the plain view doctrine would authorize the sprayer's seizure. The Fourth Amendment requires that the seizing officer have probable cause, not certainty, to believe that the seized property was stolen, see Soldal, 506 U.S. at 65-66, and that was satisfied by Mr. Baldwin's report to the Faulkner County Sheriff's Office, coupled with the matching serial number and description of the sprayer in PPS's possession.

Because we conclude that the seizure was proper under the plain view doctrine, we need not address whether consent or exigent circumstances, as found by the district court, supported Sergeant Hall's unwarranted seizure of the sprayer. See Kleinholz v. United States, 339 F.3d 674, 676 (8th Cir. 2003) (per curiam) (noting that resolution of the defendant's argument that his consent was coerced was unnecessary where the search was supported by exigent circumstances and probable cause); Sanders, 93 F.3d at 1425 (applying plain view doctrine even though the pawn broker refused to turn over the jewelry until after talking with his attorney).

B.    Due Process

PPS also brought a due process challenge to Sergeant Hall's actions, arguing that it was entitled to predeprivation notice and an opportunity to be heard. In the

criminal context, an officer may seize property related to a criminal investigation by way of an *ex parte* warrant as long as the warrant is properly supported by probable cause. See Fuentes v. Shevin, 407 U.S. 67, 93 n.30 (1972) (distinguishing a writ of replevin from a search warrant on the basis that a search warrant may issue only upon a showing of probable cause). It is axiomatic that an individual is not entitled to a predeprivation hearing before an officer may seize property pursuant to a valid search warrant. See id. ("[O]ur decision today in no way implies that there must be an opportunity for an adversary hearing before a search warrant is issued."). The same is true if one of the warrant exceptions allows an officer to seize property without a warrant. "The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of . . . property in criminal cases . . . ." Gerstein v. Pugh, 420 U.S. 103, 125 n.27 (1975). Cf. United States v. James Daniel Good Real Property, 510 U.S. 43, 51-52 (1993) (noting that the due process clause is implicated when the officer's actions go beyond the traditional meaning of search and seizure in the context of a civil forfeiture action where the officer seeks not merely to preserve evidence of wrongdoing, but to assert ownership and control over the property itself). Where the plain view doctrine justifies a warrantless seizure for valid law enforcement purposes in a criminal investigation under the Fourth Amendment, any predeprivation due process protections are necessarily subsumed within the Fourth Amendment analysis. See Sanders, 93 F.3d at 1429 ("[W]hen seizing property for criminal investigatory purposes, compliance with the Fourth Amendment satisfies pre-deprivation procedural due process as well."). Although the district court erred in applying the Matthews standard applicable to civil forfeitures to the seizure of property involved in a criminal investigation, its conclusion that there was no due process violation is correct. Without a constitutional violation, we need not, and do not, address qualified immunity.

We are sympathetic to PPS's concern that it may not avail itself of the remedies available under Arkansas criminal procedure until charges are brought against Walker

for the alleged theft of the sprayer. While we presume that there are state law civil remedies available to PPS to recover its interest in the sprayer, PPS does not argue that its right to postdeprivation due process was violated. We have carefully reviewed the briefs and the parties' arguments, and PPS's arguments revolve solely around its claim that it was entitled to predeprivation due process. Ours is an adversarial system, and we address only those issues forwarded by the parties. We therefore do not address the potential lack of adequate postdeprivation procedures. Cf. Sanders, 93 F.3d at 1429-30 (addressing the California procedures for disposal of property seized from a pawn shop).

## III.

The district court's judgment granting summary judgment is affirmed.

_____